UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MOLLY MCGINNIS, GERNOT TROLF, and TIFFANY JOHNSON, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

T-MOBILE USA, INC., a Delaware corporation,

Defendant.

No. C08-106Z

ORDER

Putative class representatives Molly McGinnis, Tiffany Johnson and Gernot Trolf, customers of T-Mobile USA, Inc.'s (T-Mobile) cellular phone services, were all charged roaming fees for voicemail message notifications they received while travelling outside the United States. Amended Complaint, docket no. 10, at ¶¶ 8-10. All contend that T-Mobile did not adequately disclose these charges and bring suit against T-Mobile for violation of consumer protection legislation in Washington, California, and Minnesota, and for breach of contract. Plaintiffs also ask for declaratory judgment that T-Mobile's mandatory arbitration and class action waiver contract clauses are unconscionable.

All three Plaintiffs received notices that they would be bound by T-Mobile's terms and conditions each time they received new phones from T-Mobile. Chang Decl., docket no.

ORDER - 1

13, at ¶ 6. Ms. McGinnis resides in Minnesota, where she signed up for T-Mobile service in 2004. Amended Complaint at ¶ 8, Chang Decl. at ¶ 4. Mr. Trolf resides in California, where he signed up for T-Mobile service in 2002. Amended Complaint at ¶ 9, Chang Decl. at ¶ 3. Ms. Johnson signed up for T-Mobile service in Florida and later moved to Georgia. Amended Complaint ¶ 10, Chang Decl. at ¶ 5. T-Mobile is a Delaware corporation with its headquarters in Bellevue, Washington. Amended Complaint at ¶ 11.

The most recent terms and conditions received by all parties state that by activating T-Mobile's service, "YOU AGREE TO BE BOUND BY THESE TERMS AND CONDITIONS." Chang Decl. at ¶ 9. The terms and conditions include provisions declaring: (1) that final, binding arbitration is mandatory for any billing disputes, id. at 11; (2) that neither party may bring any claim in a class or representative action, id. at 13; and (3) that the agreement is to be governed by the laws of the state in which the customer's billing address is located. Id. at 14.

Defendant now moves to dismiss the McGinnis and Johnson declaratory judgment claims, to compel arbitration of Plaintiffs' claims, and stay the case, docket no. 11. Defendant also moves to compel arbitration of the Trolf claims and stay the case, docket no. 12.

**DISCUSSION**

### I. Choice of Law: Georgia law applies to Ms. Johnson, and Washington law applies to Ms. McGinnis and Mr. Trolf.

A motion to compel arbitration must be granted if there is a valid agreement to arbitrate and the dispute falls within the scope of that agreement. Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000). Plaintiffs concede that their dispute falls within the scope of the arbitration clause. However, they contend that the clause is invalid as unconscionable. Amended Complaint at ¶ 36. Arbitration clauses may be invalidated on this basis. Doctor's Associates v. Casarotto, 517 U.S. 681, 687 (1996).

ORDER - 2

As a threshold matter, the Court must decide which state's law to apply to each Plaintiff. The Court applies Washington choice of law rules in diversity cases.[1] Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487 (1941). Washington choice of law guidelines require the application of Washington law unless there is an actual conflict with another potentially applicable body of law. Burnside v. Simpson Paper Co., 123 Wn.2d 93, 103 (1994). An "actual conflict" exists between the laws of Washington and the laws of another state when the two states' laws would produce different results on the same issue. Erwin v. Cotter Health Ctrs., 161 Wn.2d 676, 692 (2007). The party seeking application of another state's law bears the burden of demonstrating that this conflict exists. Burnside, 123 Wn.2d at 100 ("[T]he normal expectation should be that the rule of decision will be supplied by the domestic law as a matter of course.") (emphasis omitted) (citing B. Currie, Selected Essays on the Conflicts of Laws 75 (1963)).

### A. Ms. Johnson:

#### i. Conflict between Washington and Georgia law

The Ninth Circuit has held that T-Mobile's class action waiver and arbitration clause is unconscionable under Washington law. Lowden v. T-Mobile USA, Inc., 512 F. 3d 1213, 1218-19 (9th Cir. 2008) (relying on the Washington Supreme Court's decision in Scott v. Cingular Wireless, 160 Wn.2d 843 (2007)). The Lowden court found that the clause functioned to "exculpate the drafter from liability for a broad range of undefined wrongful conduct, including potentially intentionally wrongful conduct" and as such was unconscionable. Id. at 1218. At first blush, Georgia courts appear to use an almost identical standard in these matters. The Eleventh Circuit, applying Georgia law, held that a class action waiver was invalid when it would "allow [the defendant] to engage in unchecked market behavior that may be unlawful. Corporations should not be permitted to use class action waivers as a means to

---

[1] For this reason, Plaintiffs' recent submission of Fiser v. Dell Computer Corp., No. 30,424 (N.M. June 27, 2008) (applying New Mexico choice of law rules) provides them no help.

ORDER - 3

exculpate themselves from liability for small-value claims." Dale v. Comcast Corp., 498 F.3d 1216, 1224 (11th Cir. 2007). But a close reading of Georgia case law reveals that Georgia courts have taken a narrower view than their Washington counterparts of when precisely a class action waiver in an arbitration agreement has this effect.

A recently decided Georgia case with very similar facts to the instant case is instructive. See Honig v. Comcast of Georgia I, LLC, 537 F. Supp. 2d 1277 (N.D. Ga. 2008) (upholding mandatory arbitration clause with class action waiver when dispute related to cable provider charging subscribers for channel guide magazine without adequate disclosure). In Honig, the plaintiff's actual loss was $9.60. Honig, 537 F. Supp. 2d at 1280. Scott established that for such small controversies, even when attorney's fees are fully recoverable, Washington law assumes that any suit other than a class action would be no more than theoretical. Scott, 160 Wn.2d at 855 (agreeing with Judge Posner that "only a lunatic or a fanatic sues for $30.") The Honig court, on the other hand, found that because attorney's fees were recoverable under plaintiff's central claims, plaintiff's case provided "ample incentive" for an attorney to sue for an amount as small as $9.60. Honig, 537 F. Supp. 2d. at 1288.

Honig's perspective pervades Georgia jurisprudence. In the absence of a high probability that attorneys' fees would outstrip a prevailing plaintiff's damages, arbitration agreements with class action waivers have been upheld. Compare Dale, 498 F.3d at 1224 (invalidating arbitration agreement with class action waiver where claims were of small value and statute sued under did not provide for recovery of attorneys' fees); with Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359 (11th Cir. 2005) (upholding under Georgia law mandatory arbitration clause with class action waiver where claims brought by plaintiffs provided for automatic recovery of fees); Jenkins v. First Am. Cash Advance of Ga., LLC, 400 F.3d 868 (11th Cir. 2005) (same

ORDER - 4

under Georgia law where majority of fees automatically recoverable); Randolph v. Green Tree Fin. Corp., 244 F.3d 814 (11th Cir. 2001) (same under Georgia law where fees automatically recoverable). Ms. Johnson's claim is more similar to Honig, Caley, Jenkins and Randolph than to Dale. Johnson seeks recovery under the Washington Consumer Protection Act (CPA) which allows for attorneys' fees. The class action waiver provision of Ms. Johnson's contract with T-Mobile is valid under Georgia law.[2]

### ii. Washington's conflict of laws analysis reveals that Georgia law should be applied to Ms. Johnson's case

Washington courts use § 187 of the Restatement (Second) Conflict of Laws (§ 187) when resolving "conflict of laws problems in which the parties have made an express contractual choice of law." Erwin, 161 Wn.2d at 693. That section reads as follows:

> (2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless . . . :
>
> . . .
>
> (b) the application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

Plaintiffs dispute § 187's applicability, contending that this Court should look to Schnall v. AT & T Wireless Services, Inc., 139 Wn.App. 280 (2007) and Kelley v. Microsoft Corp., No. C07-475MJP, 2008 WL 509332 (W.D. Wash. Feb. 22, 2008), which Plaintiffs claim support applying Washington law. Plaintiffs are incorrect. In the portions of Schnall to which Plaintiffs direct the Court's attention, those courts were adjudicating tort law claims

---

[2] The Court notes that Georgia law may not even allow a class action with respect to small claims in part because Georgia law would allow attorneys' fees for very small claims. The Georgia Fair Business Practices Act (FBPA) does not allow for class actions. See Ga. Code Ann. § 10-1-399(a); see also Friedlander v. PDK Labs, Inc., 465 S.E.2d 670, 671 (Ga. 1996) ("A person who suffers injury or damages, or whose business or property has been injured or damaged, as a result of consumer acts or practices may bring an action under the FBPA individually, but not in a representative capacity . . . .") (emphasis added) (citations omitted). There is a substantial conflict between Washington and Georgia law.

ORDER - 5

under the CPA and properly looking to § 145 of the Restatement (Second) Conflict of Laws. Schnall, 139 Wn.App. at 292-94; Kelley, 2008 WL 509332 at *5. Here, because the Court is deciding a question of contract law (whether or not T-Mobile's arbitration clause is valid) and the parties have made an express choice of law to govern their contractual rights and duties, § 187 applies.

A recent case from this district, Detweiler v. T-Mobile USA, Inc., No. C07-2090RAJ, slip op. (W.D. Wash. May 2, 2008), applied § 187 to a nearly identical situation. There, as here, an out of state plaintiff sought to apply Washington law to avoid the class action waiver and arbitration clause in her contract with T-Mobile, and T-Mobile moved to compel arbitration. Id. at 2-3. The court applied the contractually chosen forum's law because there was "no indication on the record before the court that Washington's interest in expanding the reach of its consumer protection laws beyond its borders is materially greater than [the contractually chosen forum's] interest in having its own consumer law applied to its residents." Id. at 10. This Court agrees with the Detweiler court's ultimate conclusion.

The question before the Court is one of contract law, not tort law. The issue is not whether Washington has a materially greater interest in using the Washington CPA to control the actions of its corporate citizens in Georgia than Georgia has in protecting its resident consumers under the Georgia FBPA. Rather, it is whether Washington has a materially greater interest than Georgia does in determining what type of arbitration provisions are valid in a contract drafted in Washington by a Washington corporation, but entered into in Georgia by a Georgia citizen. The Court finds that Georgia's interest in determining the rights of its citizens in contracts with out-of-state actors outweighs whatever interest Washington has in regulating contracts its citizens enter into abroad.[3]

---

[3] As a result, the Court does not reach the questions of whether there is a fundamental Washington policy against T-Mobile's arbitration clause, or whether Washington law would apply in the absence of an effective choice by the parties.

ORDER - 6

The only Washington Supreme Court decision to address the "materially greater interest" issue is enlightening. In O'Brien v. Shearson Hayden Stone, Inc., 90 Wn.2d 680 (1978), Washington residents maintained margin accounts with a New York broker who charged interest rates usurious under Washington law but nonusurious under New York law. Invalidating a choice of law provision providing that New York law be applied, the Washington Supreme Court focused its analysis solely on the plaintiffs and found that "unquestionably the State of Washington has a materially greater interest in the welfare of its citizens and the impact the decision in this case will have upon them than does the State of New York." Id. at 686. So too does Georgia have a materially greater interest in determining the rights of its citizens in this case. The O'Brien court did not even judge New York's interest in regulating New York brokers worthy of mention.

There is also Ninth Circuit precedent to indicate that demonstrating a <u>materially greater</u> interest is no light burden. Flores v. American Seafoods Co., 335 F.3d 904 (9th Cir. 2003) (involving a fishing contract which specified that federal law would govern disputes). In Flores, the court left undisturbed this Court's finding that the state of Washington had a "strong public interest" in determining attorneys' fees for seamen hired in Washington. Id. at 917. It determined, however, that the federal government also had a "genuine and significant interest" in the seamen's welfare, and that for that reason the plaintiffs had not demonstrated that Washington had a "<u>materially greater</u> interest than the U.S." Id. at 917-18 (emphasis in original).

Plaintiffs put forth two recent cases that show support for the notion that Washington has an interest in regulating the practices of its resident corporations under the CPA, even where the effect of those practices is felt in other states. Schnall, 139 Wn.App. at 294 ("Washington has a strong interest in regulating the activities of Washington businesses."); Kelley 2008 WL 509332 at *7 ("The CPA targets all unfair trade practices either originating from Washington businesses or harming Washington citizens."). These statements may lend
ORDER - 7

some tangential support to the notion that a state has an interest in applying its contract law to contracts its corporations enter into outside of its borders. But they are not strong enough to overcome Georgia's "unquestionabl[e]" "interest in the welfare of its citizen[] and the impact the decision in this case will have on [her]." O'Brien, 90 Wn.2d at 686. Washington's interest does not rise to the level of Georgia's, much less far enough beyond it to be termed "materially greater." Georgia law, the contractually chosen law, must be applied and arbitration of Ms. Johnson's claims compelled.

### B. Ms. McGinnis: T-Mobile does not demonstrate an actual conflict between Washington and Minnesota law

T-Mobile's assertion that "Minnesota courts will not create an arbitration prohibition when the state legislature has not enacted one by statute" is without merit. Motion, docket no. 11, at 19. The case that T-Mobile cites in support of this far-reaching claim actually held only that the existence of a statutory cause of action does not per se preclude arbitration agreements. A.J. Lights, LLC v. Synergy Design Group, Inc., 690 N.W.2d 567, 570 (Minn. Ct. App. 2005). Furthermore, T-Mobile's contention is flatly contradicted by the Minnesota Arbitration Act itself, which clearly contemplates that Minnesota courts would invalidate arbitration agreements they found unconscionable. Minn.Stat. § 572.08 (inviting courts to invalidate arbitration agreements "upon such grounds as exist at law or in equity for the revocation of any contract.").

The parties have cited no Minnesota case where the court has ruled on the unconscionability of a class action waiver in an arbitration clause. Unconscionability was not argued in any of the cases Defendant cites in which Minnesota courts upheld arbitration agreements. It may well be the case that "Minnesota strongly favors upholding <u>valid</u> arbitration clauses and has an interest in permitting its citizens to seek redress as provided by contractual terms," St. Paul Fire & Marine Ins. Co. v. Courtney Enters., Inc., 108 F. Supp. 2d 1057, 1061 (D. Minn. 2000) (emphasis added), but Minnesota courts would probably agree

ORDER - 8

with Washington and California courts that an arbitration clause which includes a class action waiver that effectively precludes relief and exculpates T-Mobile from any liability is not "valid." The question is whether they would see T-Mobile's clause in such a light. Here it should be reiterated that it is the burden of the party seeking application of another state's law to show that there is a conflict. Burnside, 864 P.2d at 100. In that T-Mobile has not produced any authority that indicates that Minnesota courts would rule differently from Washington courts in this matter, T-Mobile has not met its burden. This Court will therefore apply Washington law, the presumptively applicable law, to decide Ms. McGinnis' claims. Washington law requires that T-Mobile's mandatory arbitration and class action waiver provision be invalidated. Lowden, 512 F.3d at 1218-19.

### C. Mr. Trolf: No conflict between Washington or California law

T-Mobile's arbitration clause is not enforceable against Mr. Trolf. Controlling Ninth Circuit decisions dictate the same result in whether the Court applies the law of Mr. Trolf's home state or of the forum state. Lowden v. T-Mobile USA, Inc., 512 F. 3d 1213, 1218-19 (9th Cir. 2008) (T-Mobile's mandatory arbitration clause unconscionable under Washington law); Shroyer v. New Cingular Wireless Servs., Inc., 496 F.3d 976, 993 (9th Cir. 2007) (holding mandatory arbitration and class action waiver clause in Cingular's cellular phone service contract unconscionable under California law).[4] T-Mobile acknowledges that Lowden and Shroyer control, but maintains that it disagrees with the decisions and notes that it has petitioned for certiorari to the U.S. Supreme Court. Nonetheless, under present case authority the Court must deny T-Mobile's motion to compel arbitration of Mr. Trolf's claims.

### II. Unconscionability

---

[4] Three recent unpublished Ninth Circuit decisions have held that T-Mobile's arbitration agreement is materially indistinguishable from Cingular's. Lowden v. T-Mobile USA, Inc., No. 06-35395, 2008 U.S. App. LEXIS 1190, at *20 (9th Cir. Jan. 22, 2008); Laster v. T-Mobile USA, Inc., No. 06-55010, 2007 U.S. App. LEXIS 25265, at *2-3 (9th Cir. Oct. 25, 2007); Ford v. Verisign, Inc., No. 06-55082, 2007 U.S. App. LEXIS 25267, at *2 (9th Cir. Oct. 25, 2007).

ORDER - 9

Plaintiffs argue that T-Mobile's choice of law agreement is itself unconscionable because it "effectively den[ies] consumers the ability to pursue consumer protection claims." Plaintiffs' Response Brief, docket no. 20, at 6. The Court's analysis of Georgia law indicates that Georgia courts and the Georgia legislature would not agree. <u>Honig</u>, 537 F. Supp. 2d. at 1288; Ga. Code Ann. § 10-1-399(a). The Court will not invalidate a contract that it has already determined should be governed by another state's law simply because the other state's law rests on different policy determinations. Diversity of legislation indicates that "reasonable people may disagree about the value of" a particular policy choice. <u>BMW of North America, Inc. v. Gore</u>, 517 U.S. 559, 570 (1996).

## CONCLUSION

For the reasons stated in the order, the Court GRANTS IN PART and DENIES IN PART Defendant's motion to dismiss the McGinnis and Johnson declaratory judgment claims and compel arbitration, docket no. 11. The Court GRANTS the motion as to Plaintiff Johnson and DENIES the motion as to Plaintiff McGinnis.

For the reasons stated in the order, the Court DENIES Defendant's motion to compel arbitration of the Trolf claims, docket no. 12.

IT IS SO ORDERED.

DATED this 22nd day of July, 2008.

                                                  Thomas S. Zilly
                                                United States District Judge