UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MOLLY McGINNIS, et al.,<br><br>                        Plaintiffs,<br><br>v.<br><br>T-MOBILE USA, INC., a Delaware corporation,<br><br>                        Defendant. | No. C08-106Z<br><br>ORDER |

THIS MATTER comes before the Court on Defendant T-Mobile's Motion to Compel Arbitration of Plaintiff Linda Alfaro's Claims, docket no. 76, and Defendant T-Mobile's Motion to Compel Arbitration of Plaintiff Diane Turner's Claims, docket no. 77. Having reviewed the papers in support of and in opposition to the motions, the Court now enters the following Order GRANTING T-Mobile's motions to compel arbitration.

# I. BACKGROUND
## A. Procedural History

On January 23, 2008, Plaintiff McGinnis filed this class action lawsuit against T-Mobile USA, Inc. ("T-Mobile") "on behalf of all T-Mobile customers in the United States who have been charged substantial roaming rates for voicemail message notifications while traveling outside the United States." Compl., docket no. 1, ¶ 2. On February 29, 2008, an

ORDER - 1

Amended Complaint was filed, adding two more putative class representatives, Trolf and Johnson. Am. Compl., docket no. 10. On July 22, 2008, the Court granted T-Mobile's motion to dismiss and compel arbitration as to Johnson, and denied T-Mobile's motions to dismiss and compel arbitration as to McGinnis and Trolf. Order, docket no. 27.

On August 25, 2008, the Court consolidated Daniels v. T-Mobile, C08-757Z, with the present case. Order, docket no. 30. On December 8, 2008, Plaintiffs filed a Consolidated Amended Complaint, which named a total of nine Plaintiffs, including Alfaro, an Oklahoma resident, and Turner, an Ohio resident. Consol. Am. Compl., docket no. 49. The Consolidated Amended Complaint is brought "on behalf of all T-Mobile customers in the United States who have been charged Improper Roaming Charges while traveling outside the United States." Id. ¶ 3.

On March 2, 2009, based on a stipulation of the parties, the Court set a briefing schedule for the motion for class certification that required Plaintiffs to file their opening motion sixty days after a scheduled April 2009 mediation, and further ordered that T-Mobile would be allowed to file any additional motions to compel arbitration by the date their opposition to the motion for class certification was due. Stipulation and Scheduling Order, docket no. 54.

When mediation failed to resolve the case, the parties advised the Court that T-Mobile intended to file a motion for summary judgment, and the parties requested that the Court: (i) allow Plaintiffs an extension on the deadline to file their motion for class certification, (ii) allow T-Mobile to file additional motions to compel arbitration after the Court ruled on Defendant's summary judgment motion, and (iii) stay discovery. Stipulation and Proposed Amended Scheduling Order, docket no. 55. The Court declined to enter the amended scheduling order, declined to stay discovery, and ordered Plaintiffs to file their motion for class certification by July 20, 2009. Order, docket no. 56. The Court subsequently extended

the deadline to file a motion for class certification to August 19, 2009. Order, docket no. 58. Plaintiffs filed their class certification motion on August 19, 2009, docket no. 68.

On August 13, 2009, T-Mobile filed a motion for summary judgment. Def.'s Mot., docket no. 60. Plaintiffs moved for more time to respond to the summary judgment motion. Pls.' Mot., docket no. 70. On August 27, 2009, the Court held a telephone conference with the parties, in which the Court stayed the briefing on the motion for class certification, granted Plaintiffs a brief extension to respond to T-Mobile's summary judgment motion, and set a deadline for T-Mobile to file any motion to compel arbitration. Minutes, docket no. 73. T-Mobile filed the present motions to compel arbitration by the Court-imposed deadline.

### B. Plaintiffs' Activation of T-Mobile Accounts

Linda Alfaro is a resident of Oklahoma, and she has been an Oklahoma resident since 2005. Consol. Am. Compl. ¶ 16; Tilstra Decl., docket no. 78, Ex. 4 (Alfaro's Resp. to Interrog. No. 1) at 2. Ms. Alfaro activated her account with T-Mobile in 2005, after assuming responsibility for a departing customer's account. Shwonek Decl., docket no. 78, ¶ 8. T-Mobile mails customers a set of Terms and Conditions ("T&C's") at the time they assume responsibility for the account. Id. Ms. Alfaro upgraded her telephone in 2006, an act that would have triggered her receipt of a Welcome Guide and another set of T&C's. Id.

Diane Turner is a resident of Ohio, and she has been an Ohio resident since 2002. Consol. Am. Compl. ¶ 15; Tilstra Decl., Ex. 1 (Turner's Resp. to Interrog. No. 1) at 2. The Consolidated Amended Complaint alleges that "Ms. Turner is a customer of T-Mobile's cellular telephone services." Consol. Am. Compl. ¶ 15.[1] T-Mobile provides customers with a Welcome Guide and a set of T&C's at the time they activate service and purchase a phone. Shwonek Decl. ¶ 4.

---

[1] Ms. Turner does not have an account with T-Mobile, but her former husband, David Turner, activated service with T-Mobile in 2005. Shwonek Decl. ¶ 9. To the extent Ms. Turner's standing to assert claims against T-Mobile is an issue, see Def.'s Mot., docket no. 60, at 23, it should be addressed in connection with the arbitration proceedings.

ORDER - 3

**C. The 2004 T&C's**

The version of T&C's applicable to Ms. Alfaro's activation and upgrade, and to Mr. Turner's activation, was that published by T-Mobile in 2004 (the "2004 T&C's"). Shwonek Decl. ¶ 10. The 2004 T&C's provide that the customer agrees to be bound by the T&C's by activating or using T-Mobile's service:

> **BY ACTIVATING OR USING OUR SERVICE YOU AGREE TO BE BOUND BY THESE TERMS AND CONDITIONS ("T&C's"). PLEASE READ THESE T&C's CAREFULLY. They affect your legal rights by, among other things, requiring MANDATORY ARBITRATION OF DISPUTES . . . IF YOU DO NOT AGREE TO THESE T&C's, DO NOT ACTIVATE OR USE THE SERVICE OR YOUR WIRELESS PHONE, DEVICE, SMART CARD, OR OTHER EQUIPMENT . . .**

Id., Ex. 1 (2004 T&C's) at T-Mobile 001580 (emphasis in original).

The 2004 T&C's require mandatory arbitration and a class action waiver, as follows:

> **2. MANDATORY ARBITRATION TO RESOLVE DISPUTES/CLASS ACTION WAIVER/JURY TRIAL WAIVER: ARBITRATION. PLEASE READ THIS PROVISION CAREFULLY. IT MEANS THAT, EXCEPT AS NOTED BELOW, YOU AND WE WILL ARBITRATE OUR DISPUTES. ANY CLAIM OR DISPUTE BETWEEN YOU AND US IN ANY WAY RELATED TO OR CONCERNING THE AGREEMENT, OR THE PROVISION OF SERVICES OR PRODUCTS TO YOU, INCLUDING ANY BILLING DISPUTES ("CLAIM"), SHALL BE SUBMITTED TO FINAL, BINDING ARBITRATION BEFORE THE AMERICAN ARBITRATION ASSOCIATION ("AAA"). . . .**
>
> **CLASS ACTION WAIVER. WHETHER IN COURT, SMALL CLAIMS COURT, OR ARBITRATION, YOU AND WE MAY ONLY BRING CLAIMS AGAINST EACH OTHER IN AN INDIVIDUAL CAPACITY AND NOT AS A CLASS REPRESENTATIVE OR A CLASS MEMBER IN A CLASS OR REPRESENTATIVE ACTION. . . . IF A COURT OR ARBITRATOR DETERMINES IN A CLAIM BETWEEN YOU AND US THAT YOUR WAIVER OF ANY ABILITY TO PARTICIPATE IN CLASS OR REPRESENTATIVE ACTIONS IS UNENFORCEABLE UNDER APPLICABLE LAW, THE ARBITRATION AGREEMENT WILL NOT APPLY, AND YOU AND WE AGREE THAT SUCH CLAIMS WILL BE RESOLVED BY A COURT OF APPROPRIATE JURISDICTION, OTHER THAN A SMALL CLAIMS COURT.**

Id., Ex. 1 (2004 T&C's) at T-Mobile 001580-001581, ¶ 2 (emphasis in original).

The 2004 T&C's contain a choice of law provision:

ORDER - 4

> **23. Entire Agreement/Applicable Law/Venue/Miscellaneous**. . . . This Agreement is governed by the Federal Arbitration Agreement, applicable federal law, and the laws of the state in which your billing address in our records is located. Foreign laws do not apply. . . .

Id., Ex. 1 (2004 T&C's) at T-Mobile 001586 (emphasis in original).

### D. Plaintiffs' Review of the 2004 T&C's

Ms. Alfaro testified in her deposition that she read "the highlights" of the 2004 T&C's, including the parts of the agreement in bold or all capital letters, but not every word of the agreement. Tilstra Decl., Ex. 5 (Alfaro Dep.) at 171:2-18, 180:12-16.

Ms. Turner testified in her deposition that she never read the T&C's, but that she had no reason to believe that Mr. Turner was prevented from reading any T&C's that T-Mobile may have provided to him at the time he activated service. Id., Ex. 2 (Turner Dep.) at 47:2-8, 122:4-6.

## II. DISCUSSION
### A. Standard of Review

A motion to compel arbitration must be granted if there is a valid agreement to arbitrate and the dispute falls within the scope of that agreement. Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000); see also 9 U.S.C. § 4. There is no dispute that the present dispute falls within the scope of the 2004 T&C's arbitration provisions.[2] The issues here are: (1) whether T-Mobile waived its ability to move to compel arbitration, and, if no waiver, (2) whether there is a valid agreement to arbitrate under the state law applicable to each Plaintiff.[3]

---

[2] Plaintiffs have not challenged T-Mobile's assertion that both Ms. Alfaro and Mr. Turner entered into arbitration agreements with T-Mobile and that Ms. Alfaro's claims and Ms. Turner's claims (standing in the shoes of Mr. Turner) against T-Mobile fall within the scope of the arbitration provisions of those agreements. Def.'s Mots. to Compel Arbitration at 5.

[3] Plaintiffs also argue that new revelations about the arbitration industry militate against compelling arbitration. Pls.' Opp'n, docket no. 96, at 9-11. Plaintiffs argue that at a minimum these motions should be stayed pending T-Mobile's responses to discovery requests. The Court has granted T-Mobile a protective order regarding arbitration-related discovery, see Minute

ORDER - 5

**B.     Waiver**

Plaintiffs argue that T-Mobile waived its right to arbitrate by engaging in substantial proceedings in this Court. This case was filed in January 2008, with one named Plaintiff, McGinnis. Compl., docket no. 1. On February 29, 2008, Plaintiff McGinnis amended her complaint to add Plaintiffs Trolf and Johnson. Am. Compl., docket no. 10. In March and April 2008, T-Mobile moved to compel arbitration of all three Plaintiffs' claims. Def.'s Mots. to Compel Arbitration, docket nos. 11 and 12. The Court compelled Johnson to arbitrate, but not McGinnis or Trolf. Order, docket no. 27. In December 2008, Plaintiffs filed the operative complaint, bringing six new Plaintiffs into the case. Consol. Am. Compl., docket no. 49. Thereafter, the parties have engaged in discovery and have submitted several stipulated briefing schedules to the Court in an attempt to coordinate the motion practice in an efficient manner. These stipulations have consistently preserved T-Mobile's right to file additional motions to compel arbitration. See Stipulation and Scheduling Order, docket no. 54; Stipulation and Proposed Amended Scheduling Order, docket no. 55.

Under both state and federal law standards for determining waiver, the Court finds no waiver here. T-Mobile did not waive its right to compel arbitration by engaging in discovery or by bringing its motion for summary judgment in light of its consistent efforts to preserve its rights through the stipulations of the parties. Plaintiffs have not made any showing of prejudice as a result of the timing of T-Mobile's motions to compel arbitration of Alfaro's and Turner's claims.

**C.     Choice of Law**

Finding no waiver, the Court must determine whether there is a valid agreement to arbitrate under the state law applicable to each Plaintiff. The Court must decide which state's law to apply to each Plaintiff. The Court applies Washington choice of law rules in diversity cases. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). As

---

Order, docket no. 114, and the Court does not find Plaintiffs' argument persuasive.

ORDER - 6

described in more detail below, under Washington law choice of law rules, the Court must determine whether there is an actual conflict between Washington and another state's law. If there is no actual conflict, Washington law will apply. If there is an actual conflict, the Court must determine whether to apply the law of the state chosen by the parties to govern their contractual rights and duties pursuant to Section 187 of the Restatement (Second) Conflict of Laws (1971) (the "Restatement").

### 1. **Actual Conflict**

Washington choice of law guidelines require the application of Washington law unless there is an actual conflict with another potentially applicable body of law. Burnside v. Simpson Paper Co., 123 Wn.2d 93, 103 (1994). An "actual conflict" exists between the laws of Washington and the laws of another state when the two states' laws would produce different results on the same issue. Erwin v. Cotter Health Ctrs., 161 Wn.2d 676, 692 (2007). The party seeking application of another state's law bears the burden of demonstrating a conflict. Burnside, 123 Wn.2d at 100.

#### a. **Ms. Alfaro: Actual Conflict between Washington and Oklahoma Law**

The Ninth Circuit has held that T-Mobile's nonseverable class action waiver is invalid and that the arbitration clause is therefore unenforceable under Washington law. Lowden v. T-Mobile USA, Inc., 512 F.3d 1213, 1218-19 (9th Cir. 2008) (relying on the Washington Supreme Court's decision in Scott v. Cingular Wireless, 160 Wn.2d 843 (2007)).

T-Mobile argues that there is an actual conflict between Washington and Oklahoma law because Oklahoma courts have upheld class action waivers and arbitration provisions in consumer arbitration agreements. T-Mobile relies on Edwards v. Blockbuster Inc., 400 F. Supp. 2d 1305, 1308-09 (E.D. Okla. 2005), in which the Court determined that a class action waiver and a mandatory arbitration provision were enforceable. The Edwards Court granted a motion to compel arbitration based on Blockbuster's Membership Agreement's

ORDER - 7

arbitration provision. However, the Edwards Court found that the Agreement was valid and fully enforceable based on federal law (i.e., the Federal Arbitration Act) and not Oklahoma law. See Edwards, 400 F. Supp. 2d at 1308-09. Thus, Edwards does not support T-Mobile's "actual conflict" argument.

In addition to Edwards, T-Mobile also relies on an Oklahoma County District Court case in which the court compelled arbitration after holding:

> (1) The parties' contracts contain a mandatory arbitration provision, which is binding; [and]
>
> (2) The arbitration provision is not unconscionable ***under Oklahoma law***.

Tilstra Decl., Ex. 6 (Herzer v. T-Mobile USA, Inc., Case No. CJ-2005-1002, slip op. at 1 (Okla. County Dist. Ct. Dec. 1, 2005) (emphasis added). The Herzer Court so held even though the mandatory arbitration provision at issue in that case, at Paragraph 19 of the "VoiceStream Wireless Terms and Conditions," contained a class action waiver. Tilstra Decl, Ex. 7 (attaching the pertinent T&C's to Plaintiffs' Response brief) (". . . All claims shall be arbitrated individually and you agree that no person shall bring a . . . certified class action to arbitration . . . "). The parties' briefing leading up to the decision has been submitted to this Court, and it is clear that the class action waiver issue was fully developed. Tilstra Decl., Ex. 7 (Pls.' Resp.) at 7-8 (arguing that the mandatory arbitration provision forecloses the class action mechanism provided for by Oklahoma Code of Civil Procedure) and Ex. 8 (Defs.' Reply) at 4-6 (arguing that many federal circuit courts have upheld class action waivers in arbitration agreements and that states that have invalidated class action waivers are in the minority view). Thus, Herzer supports T-Mobile's "actual conflict" argument.

Plaintiffs argue that there is no actual conflict between Washington and Oklahoma law because more recent decisions than Edwards and Herzer have denied enforcement of arbitration agreements under Oklahoma law. Plaintiffs rely on Anderson v. Regis

ORDER - 8

Corporation, 2006 U.S. Dist. LEXIS 31302 (N.D. Okla. Apr. 26, 2006), in which the Court denied a motion to compel arbitration. Plaintiffs misrepresent <u>Anderson</u> in stating that the <u>Anderson</u> Court determined that an arbitration agreement was unenforceable "under Oklahoma law." Pls.' Opp'n at 9:2. The <u>Anderson</u> Court applied federal law, not Oklahoma law. <u>Anderson</u> at *11-12 (citing cases from the U.S. Supreme Court, Tenth Circuit, and District of Connecticut);[4] <u>see</u> also <u>id.</u> at n.3 ("the Court does not expressly reach the . . . question of whether the Arbitration Agreements are unconscionable or void under Oklahoma law, except to the extent necessary in its conclusion regarding severability"). Thus, <u>Anderson</u> does not support Plaintiffs' argument that there is no actual conflict between Washington and Oklahoma law on the issue of the enforceability of mandatory arbitration provisions and class action waivers.

In addition to <u>Anderson</u>, Plaintiffs rely on <u>Freeman v. Bodyworks, Inc.</u>, 213 P.3d 838 (Okla. Civ. App. 2008), to argue that there is no actual conflict between Washington and Oklahoma law. In <u>Freeman</u>, however, the Oklahoma appellate court affirmed the trial court's *granting* of a motion compelling arbitration. <u>See</u> <u>Freeman</u>, 213 P.3d at 841. The Court is not persuaded by Plaintiffs' argument that T-Mobile's arbitration clause is unenforceable under Oklahoma law because it is contained in an adhesion contract. <u>See</u> <u>id.</u> at 840 ("[A]dhesion contracts, although often annoying, are enforceable.").

The Court finds that class action waivers and mandatory arbitration provisions in consumer agreements are valid under Oklahoma law. Accordingly, there is an actual conflict between Washington and Oklahoma law.

---

[4] Plaintiffs quote <u>Anderson</u> for the proposition that the Court determined that "an arbitration agreement may be unenforceable where its terms actually prevent an individual from effectively vindicating his or her statutory rights." Pls.' Opp'n at 9. <u>Anderson</u>, in turn, quoted this language from <u>Shankle v. B-G Maintenance Mgmt. of Colo.</u>, 163 F.3d 1230, 1234 (10th Cir. 1999). <u>See</u> <u>Anderson</u> at *12. <u>Shankle</u> evaluated the enforceability of a mandatory arbitration agreement in the employment context solely under federal law, and specifically, under the Federal Arbitration Act. <u>See</u> <u>Shankle</u>, 163 F.3d at 1233-35. <u>Shankle</u> does not support Plaintiffs' "no actual conflict" argument.

ORDER - 9

### b. Ms. Turner: Actual Conflict between Washington and Ohio Law

T-Mobile also argues that there is an actual conflict between Washington and Ohio law with regard to the enforceability of arbitration clauses and class action waivers. T-Mobile relies on Hawkins v. O'Brien, 2009 WL 50616 (Ohio Ct. App. Jan. 9, 2009), rev. denied, 121 Ohio St. 3d 1503 (2009), in which the Ohio Court of Appeals determined that a class action waiver and a mandatory arbitration provision within a consumer contract were enforceable under Ohio and federal law. The Hawkins Court discussed Ohio Rev. Code 2711.01(a), which provides that arbitration agreements are enforceable, "except upon grounds that exist at law or in equity for the revocation of a contract." See Hawkins, 2009 WL 50616 at \*\*2-3. The Hawkins Court held that the arbitration clause was not procedurally or substantively unconscionable, and that it was not against public policy. See id. at \*\*3-6. Specifically, the Hawkins Court rejected the plaintiff's argument that the arbitration clause should not be enforced because its class action waiver is against public policy. See id. at \*5. The Hawkins Court reasoned that the class action waiver provision of the Ohio Consumer Sales Practices Act (under which the plaintiff brought his claim) is a "procedural mechanism[] that aid[s] consumers in their prosecution of CSPA violations. [It] confer[s] no additional substantive rights." Id. at \*6. Thus, "nothing in the arbitration clause denies [the plaintiff] any . . . substantive rights." Id.

Plaintiffs acknowledge Hawkins as a case that rejected a consumer's argument that an arbitration clause was unenforceable as a result of a class action waiver. Pls.' Opp'n at 7. However, Plaintiffs argue that "other recent Ohio decisions" have stricken down arbitration provisions and class action waivers. Plaintiffs rely on two cases, both of which were decided

//

//

//

prior to Hawkins. See Schwartz v. Alltel Corp. 2006 WL 2243649 (Ohio Ct. App. June 29, 2006); Eagle v. Fred Martin Motor Co., 809 N.E.2d 1161, 1180 (Ohio Ct. App. 2004).[5]

The enforceability of class action waivers in arbitration clauses is no doubt an active area of developing jurisprudence under Ohio law, and one in which the Ohio Supreme Court has yet to rule. However, this Court is convinced that T-Mobile's arbitration clause and class action waiver would be upheld under Ohio law in light of Hawkins, and in light of two cases that have applied Ohio law after Hawkins – i.e., Stachurski v. DirecTV, Inc., 642 F. Supp. 2d 758 (N.D. Ohio 2009), a case relied upon by T-Mobile in its reply brief, and Alexander v. Wells Fargo Financial Ohio 1, Inc., 2009 WL 2963770 (Ohio Ct. App. Sept. 17, 2009). Both Stachurski and Alexander upheld arbitration clauses with class action waivers, distinguishing Schwartz and Eagle and following Hawkins. Plaintiffs in the present case have not presented any substantive argument about how the facts of this case would lead to a finding of procedural or substantive unconscionability, or to a finding that the arbitration clause violated public policy under Schwartz and Eagle.

### c. **Conclusion Re: Actual Conflict**

There is an actual conflict between the laws of Washington, on the one hand, and the laws of Oklahoma and Ohio, on the other hand, regarding the enforceability of an arbitration provision containing a class action waiver.

### 2. **Restatement (Second) Conflict of Laws (§ 187)**

The Court must determine whether to apply the law of the state chosen by the parties to govern their contractual rights and duties pursuant to Section 187 of the Restatement. See Erwin, 161 Wn.2d at 694. Section 187 of the Restatement provides, in pertinent part:

---

[5] In a footnote, Plaintiffs rely on a third case, Bluford v. Wells Fargo Financial Ohio 1, Inc., 176 Ohio App. 3d 500 (Ohio Ct. App. 2008). Pls.' Opp'n at 8 n.7. Bluford does not support Plaintiffs' argument because it does not reach the enforceability issue. See Bluford, 176 Ohio App. 3d at 506 ("Having determined that the present dispute . . . was not subject to arbitration, we do not need to address the issue of whether the class-action waiver was against public policy or whether the arbitration agreement was unconscionable.").

ORDER - 11

> (1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.
>
> (2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either
>
>> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
>>
>> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

Restatement (Second) Conflict of Laws (§ 187) (1971).

The 2004 T&C's contain a choice of law provision, that provides: "This Agreement is governed by . . . the laws of the state in which your billing address in our records is located." Shwonek Decl., Ex. 1 (2004 T&C's) at T-Mobile 001586. Under this choice of law provision, Ms. Alfaro's Agreement with T-Mobile is governed by Oklahoma law, and Ms. Turner's (alleged) Agreement with T-Mobile is governed by Ohio law. Oklahoma's and Ohio's interests in determining the rights of their citizens in contracts with out-of-state actors outweigh whatever interest Washington has in regulating contracts its citizens enter into abroad. Washington's interest in the determination of the present issues is not materially greater than Oklahoma's interest with respect to Ms. Alfaro, and Ohio's interest with respect to Ms. Turner. Accordingly, the Court applies the contractually-chosen Oklahoma law to Ms. Alfaro's claims and contractually-chosen Ohio law to Ms. Turner's claims.

### D. **Validity of the 2004 T&C's Mandatory Arbitration Provision and Class Action Waiver under Oklahoma and Ohio Law**

The 2004 T&C's mandatory arbitration provision and class action waiver are valid and enforceable under Oklahoma law. See Herzer v. T-Mobile USA, Inc., Case No.

ORDER - 12

CJ-2005-1002, slip op. at 1 (Okla. County Dist. Ct. Dec. 1, 2005). Oklahoma law thus requires the arbitration of Ms. Alfaro's claims.

The 2004 T&C's mandatory arbitration provision and class action waiver are valid and enforceable under Ohio law. See Hawkins, 2009 WL 50616; Stachurski, 642 F. Supp. 2d 758; Alexander, 2009 WL 2963770. Ohio law thus requires the arbitration of Ms. Turner's claims.

## III. CONCLUSION

The Court GRANTS Defendant T-Mobile's Motion to Compel Arbitration of Plaintiff Linda Alfaro's Claims, docket no. 76, and GRANTS Defendant T-Mobile's Motion to Compel Arbitration of Plaintiff Diane Turner's Claims, docket no. 77.

IT IS SO ORDERED.

DATED this 9th day of December, 2009.

　　　　　　　　　　　　　　　　／s／ Thomas S. Zilly
　　　　　　　　　　　　　　　　Thomas S. Zilly
　　　　　　　　　　　　　　　　United States District Judge